# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

STATE FARM LIFE INSURANCE
COMPANY,

    Plaintiff,

    v.

SUE NELL DYKSTRA,
NICOLE ERRIN DYKSTRA,
ELIZABETH HOLLY DYKSTRA, and
AMERICAN FUNERAL FINANCIAL,
LLC,

    Defendants.

_____

SUE NELL DYKSTRA,

    Cross Claimant,

    v.

NICOLE ERRIN DYKSTRA and
ELIZABETH HOLLY DYKSTRA,

    Cross Defendants.

2:21-CV-136

## ORDER

Before the Court are competing motions for summary judgment filed by Defendant Sue Nell Dykstra and Defendants Elizabeth and Nicole Dykstra.  Dkt. No. 12;[1] Dkt. No. 30.  After reviewing the

---

[1] Defendant Sue Nell Dykstra originally filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 12.  However, during a hearing on the motions, all parties agreed that her motion for judgment on the pleadings should be

briefs and holding a hearing, the Court **GRANTS** Defendant Sue Nell Dykstra's motion for summary judgment, dkt. no. 12, and **DENIES** Defendants Elizabeth and Nicole Dykstra's motion for summary judgment, dkt. no. 30.

## FACTUAL BACKGROUND

This case is a life insurance dispute. Plaintiff State Farm Life Insurance Company ("Plaintiff State Farm") filed an interpleader action naming Defendant Sue Nell Dykstra, Defendants Elizabeth and Nicole Dykstra, and Defendant American Funeral Financial, LLC, ("Defendant American Funeral Financial") as adverse claimants on Decedent Jerry Dykstra's ("Decedent") State Farm life insurance policy (number LF-2671-5879) (the "Policy"). Dkt. No. 4 ¶¶ 2-5, 10.

Plaintiff State Farm issued the Policy on or about August 26, 2009. Dkt. No. 4 ¶ 10; Dkt. No. 4-1 at 2; Dkt. No. 12 at 2; Dkt. No. 30-1 ¶ 3. In Decedent's Policy application ("Application"), he included two beneficiary designations. Dkt. No. 4-1 at 16; Dkt. No. 4 ¶ 12, 13; Dkt. No. 12 at 2-3; Dkt. No. 30-1 at 3.

---

converted to a motion for summary judgment under Rule 12(d)'s conversion mechanism. They further agree that no additional pertinent material needs to be submitted to the Court. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

First, Decedent listed Defendant Sue Nell Dykstra, his then-wife, as the primary beneficiary under the Policy, entitled to 100% of the benefits maintained.  Dkt. No. 4-1 at 16; Dkt. No. 4 ¶¶ 12, 13; Dkt. No. 12 at 2-3; Dkt. No. 30-1 at 3.  Second, Decedent listed Defendants Elizabeth and Nicole Dykstra, his children, as successor beneficiaries "with equal shares."  Dkt. No. 4-1 at 16; Dkt. No. 4 ¶ 12; Dkt. No. 12 at 2-3; Dkt No. 30-2 at 1-2.  Decedent made no changes to these beneficiary designations at any time. Dkt. No. 4 ¶ 22.

On or about November 14, 2017, Defendant Sue Nell Dykstra initiated a divorce action against Decedent.  Dkt. No. 4 ¶ 14; Dkt. No 12 at 3; Dkt. No. 30-1 ¶ 1.  On February 8, 2019, the couple agreed to a Consent Final Judgment and Decree of Divorce ("Divorce Decree").  Dkt. No. 4 ¶ 15; Dkt. No. 12 at 3; Dkt No. 30-1 ¶ 1; see generally Dkt. No. 4-2.  The Divorce Decree required Decedent to transfer certain property and pay certain funds to Defendant Sue Nell Dykstra, in addition to imposing an obligation on Decedent to maintain life insurance.  Dkt. No. 4 ¶¶ 16, 17; Dkt. No. 4-2 at 4-6; Dkt. No. 12 at 3; Dkt No. 30-1 ¶ 2.

Specifically, the Divorce Decree required Decedent to sell the "former marital home" and provide "50% of the net proceeds" of that sale to Defendant Sue Nell Dykstra.  Dkt. No. 4 ¶ 16; Dkt. No. 4-2 at 5.  Regarding life insurance, the Divorce Decree

3

required Decedent to "maintain a life insurance policy on his life designating [Defendant Sue Nell Dykstra] as beneficiary of THREE HUN[D]RED THIRTY THOUSAND DOLLARS ($330,000) until the last transfer of property as provided herein is complete and the funds distributed to [Defendant Sue Nell Dykstra]." Dkt. No. 4 ¶ 17; Dkt. No. 4-2 at 6; Dkt. No. 12 at 3-4; Dkt. No. 30-1 ¶ 2.

On December 10, 2020, Defendant Sue Nell Dykstra executed a "SATISFACTION AND RELEASE," as to the Divorce Decree ("Satisfaction and Release"), providing that Decedent had paid Defendant Sue Nell Dykstra her portion of the equity in the marital home after its sale, and, therefore, "all obligations and responsibilities of the parties provided by the Divorce Decree and Mediated Settlement Agreement have now been fulfilled and no further actions are necessary by either party." Dkt. No. 4 ¶¶ 18, 19; Dkt. No. 4-3 at 2; Dkt. No. 12 at 4; Dkt. No. 30-1 ¶ 4.

Less than one year later, on September 17, 2017, the Decedent died. Dkt. No. 4 ¶ 20; Dkt. No 4-4; Dkt. No. 12 at 4; Dkt. No. 11 ¶ 20. At the time of his death, the Policy benefits totaled one million, one hundred eighty-four dollars ($1,000,184.00) ("Policy Benefits"). Dkt. No. 4 ¶ 21; Dkt. No. 12 at 4; Dkt. No. 30-2 at 4. Pursuant to the terms of the Policy and all applicable law, the Policy Benefits became payable to the proper beneficiary or beneficiaries upon the Decedent's death. Dkt. No. 4 ¶ 21; Dkt.

4

No. 15 ¶ 21; Dkt. No. 30-2 at 1 (acknowledging that if the Court were to find in their favor, the Policy Benefits would be payable).

Shortly after Decedent's death, Plaintiff State Farm received multiple adverse claims to the Policy Benefits. Dkt. No. 4 ¶¶ 23-26. First, Plaintiff State Farm received an Assignment Notification from Defendant American Funeral Financial ("Assignment Notification"). Dkt. No. 4 ¶ 23; Dkt. No. 4-5. The Assignment Notification stated that Defendant Sue Nell Dykstra "purportedly assigned $12,791.31 of the Policy Benefits to [Defendant] American Funeral Financial [] as payment for Decedent's funeral expenses." Dkt. No. 4 ¶ 24; Dkt. No. 4-5 at 2-3. Then, on or about October 15, 2021, Defendants Elizabeth and Nicole Dykstra made a claim to the Policy Benefits pursuant to their designation in the Policy as successor beneficiaries. Dkt. No. 4 ¶ 25. In support of their claim, Defendants Elizabeth and Nicole Dykstra alleged that the Divorce Decree and the Satisfaction and Release invalidated Defendant Sue Nell Dykstra's primary beneficiary designation. Id.

Thereafter, Plaintiff State Farm notified all the Defendants that, as a result of Defendants Elizabeth and Nicole Dykstra's claims, there are adverse claims to the Policy Benefits, and therefore, it would "allow [the Defendants] an opportunity to resolve their adverse claims by accommodating any agreement

5

reached between them regarding the distribution of the Policy Benefits," but "that in the event they were unable to come to an agreement, [Plaintiff State Farm] would initiate an interpleader action to resolve their adverse claims through judicial intervention." Dkt. No. 4 ¶ 26. Because Defendants did not come to an agreement "on the proper distribution of the Policy Benefits," Plaintiff State Farm "cannot determine the proper beneficiary or beneficiaries" and filed this interpleader action to resolve the adverse claims. Dkt. No. 4 ¶¶ 27, 28.

## PROCEDURAL BACKGROUND

On December 30, 2021, Plaintiff State Farm filed its complaint in interpleader, dkt. 1 (original complaint); see also dkt. no. 4 (amended complaint in interpleader), asking this Court to consider two options in resolving the adverse claims to the Policy Benefits. Dkt. No. 4 ¶¶ 29, 30. First, "if the Court determines that the Primary Beneficiary Designation was effective at the time of the Decedent's death, the funeral expenses would be payable to [Defendant] American Funeral Financial, LLC in accordance with the Assignment Notification, and the remainder of the Policy Benefits would be payable to [Defendant Sue Nell Dykstra] in accordance with the Primary Beneficiary Designation." Dkt. No. 4 ¶ 29. Or, second, "if the Court determines that the Primary Beneficiary Designation was invalidated or negated by either the Divorce Decree

6

or the Satisfaction and Release, the Policy Benefits would be payable to Nicole and Elizabeth in equal amounts pursuant to the Subsidiary Beneficiaries Designation." Dkt. No. 4 ¶ 30.

After all three Dykstra Defendants filed their respective answers, dkt. no. 10, dkt. no. 11, Defendant Sue Nell Dykstra filed a motion for judgment on the pleadings. Dkt. No. 12. Defendant American Funeral Financial has not plead or otherwise appeared in this case since returning its waiver of service. Dkt. No. 9.

On March 28, 2022, the Court granted Plaintiff State Farm's consent motion to deposit funds in the amount of $1,032,468.04, representing the Policy Benefits and all accrued interest, into the Court's registry. Dkt. No. 14; Dkt No. 17. Less than one month later, on April 4, 2022, Defendant Sue Nell Dykstra filed an amended answer, asserting a crossclaim against Defendants Elizabeth and Nicole Dykstra. Dkt. No. 15. Shortly thereafter, this Court issued an Order dismissing Plaintiff State Farm from this interpleader action. Dkt. No. 21. The Order granted State Farm's motion seeking (1) discharge from liability under the life insurance policy; (2) dismissal from this action with prejudice; and (3) a permanent injunction barring future actions against it relating to the Policy Benefits. Dkt. No. 19 at 4-5; Dkt. No. 21.

Then, Defendants Elizabeth and Nicole Dykstra filed a motion for summary judgment. Dkt. No. 30. In a hearing before the Court

on the pending motions, all parties agreed to convert Defendant
Sue Nell Dykstra's motion for judgment on the pleadings, dkt. no.
12, to a motion for summary judgment under Federal Rule of Civil
Procedure 56, without the need for any additional time to
supplement the record. Fed. R. Civ. P. 56; Fed. R. Civ. P. 12(c)-
(d). Thus, the Court will address Defendants' cross-motions for
summary judgment. Dkt. Nos. 12, 30.

**LEGAL STANDARD**

When ruling on cross-motions for summary judgment, the Court
will view the facts "in the light most favorable to the nonmoving
party on each motion." James River Ins. Co. v. Ultratec Special
Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022) (citing Chavez
v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir.
2012)). Cross-motions for summary judgment do not, in and of
themselves, require the Court to grant summary judgment to any
party. United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir.
1985) (quoting Bricklayers Int'l Union, Loc. 15 v. Stuart
Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)). Rather,
summary judgment "shall" be granted if "the movant shows that there
is no genuine dispute as to any material fact and that the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). A dispute is "genuine" where the evidence would allow "a
reasonable jury to return a verdict for the nonmoving party."

FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" only if it "might affect the outcome of the suit under the governing law."  Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the Court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  See Anderson, 477 U.S. at 257.  The nonmovant may satisfy this burden in one of two ways.  First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency." Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing "more than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

As a threshold matter, despite Plaintiff State Farm's dismissal from this action, the Court has subject matter jurisdiction over the remaining interpleader claims because the jurisdictional prerequisites under 28 U.S.C. § 1332 are satisfied. "[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

In its amended complaint, Plaintiff State Farm alleged that this Court has jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1332 and Federal Rule of Civil Procedure 22 ("rule interpleader"), and, separately, 28 U.S.C. § 1335 ("statutory interpleader").  Dkt. No. 4 at 2-3.  Rule interpleader and statutory interpleader are independent and distinct jurisdictional

bases, and the Court needs only one, not both, to have subject matter jurisdiction. See Metro. Life Ins. Co. v. Carter, No. 3:04-cv-668-J-99HTS, 2005 WL 2810699, at *9 n.30 (M.D. Fla. Oct. 27, 2005) ("These provide independent bases for bringing an interpleader action; their primary difference lies in their respective jurisdictional prerequisites." (citing Allstate Ins. Co. v. Young, 923 F. Supp. 1559, 1561 (S.D. Ga. 1996) (explaining the distinctions between rule and statutory interpleader))).

Rule interpleader requires an independent statutory basis for federal courts to have original jurisdiction. See Perkins State Bank v. Connolly, 632 F.2d 1306, 1310 n.3 (5th Cir. 1980) ("'[R]ule interpleader' may only be invoked where all jurisdictional requisites otherwise are met; it is not dependent, therefore, on any special statutory grant of jurisdiction or venue.") (citing 7 C. Wright & A. Miller, Federal Practice & Procedure § 1703 (1972)). Thus, in a rule interpleader action brought under 28 U.S.C. § 1332, there must be complete diversity of citizenship between the plaintiff-stakeholder and the defendant-claimants, and the amount in controversy must exceed $75,000. Id. Federal courts have held that dismissal of a plaintiff-stakeholder does not destroy diversity jurisdiction. See State Farm Life Ins. Co. v. Jefferson, No. CV-116-085, 2017 WL 2198179, at *3 (S.D. Ga. May 18, 2017) ("In [rule] interpleader actions that initially satisfy the

diversity and amount-in-controversy requirements of [28 U.S.C.] § 1332, federal courts have continued to exercise jurisdiction after the dismissal of the stakeholder, even though the remaining parties (i.e., the claimants) are not diverse from each other." (quoting Am. Gen. Life Ins. Co. v. Jones, No. 08-0211-WS-B, 2008 WL 4949847, at *1 (S.D. Ala. Nov. 13, 2008)); Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992) ("We know of no reason not to follow the standard rule in diversity cases that if jurisdiction is present when the case is filed, a change in citizenship will not destroy jurisdiction.").

In this case, the diversity requirement of 28 U.S.C. § 1332 was initially satisfied because Plaintiff State Farm is an Illinois citizen, Defendants Sue Nell Dykstra and Defendants Elizabeth and Nicole Dykstra are Georgia citizens, and American Funeral Financial, LLC, is a Utah citizen. Dkt. No. 4 at 1-3. Additionally, the amount in controversy, namely the amount in Policy Benefits plead at the time the Complaint was filed (excluding accrued interest) amounted to $1,000,184.00, exceeding the statutory minimum. Dkt. No. 14. So, despite Plaintiff State Farm's dismissal, the Court retains jurisdiction over the remaining interpleader claims because, at the time the case was filed, both factors required by 28 U.S.C. § 1332 were satisfied.

**II.  Cross-Motions for Summary Judgment**

With subject matter jurisdiction being satisfied, the Court now addresses the competing motions for summary judgment.  Dkt. No. 12; Dkt. No. 30.  Each side argues they are entitled to summary judgment, and accordingly, the disbursement of the Policy Benefits from the funds in the Court's registry.  Dkt. No. 12 at 1; Dkt. No. 30-2 at 1.

In short, Defendant Sue Nell Dykstra argues that neither the Divorce Decree nor the Satisfaction and Release affect the Policy. She points out that neither document mentions the particular State Farm Policy at issue here.  Dkt. No. 12 at 6-7.  Rather, the Divorce Decree required Decedent to maintain "a life insurance policy for [Defendant Sue Nell Dykstra] in the amount of $330,000." Dkt. No. 12 at 3, 6-7.  Moreover, although the Divorce Decree required Decedent to maintain life insurance listing her as the primary beneficiary until certain acts were completed, it did not prohibit Decedent from keeping her as the beneficiary upon completion of any required acts.  Defendant Sue Nell Dykstra argues that because the Policy explicitly lists her as the primary beneficiary, there is no genuine dispute of material fact regarding her entitlement to the Policy Benefits as the primary beneficiary. Dkt. No. 12 at 5-7.

In contrast, Defendants Elizabeth and Nicole Dykstra argue that the Divorce Decree incorporates the Policy. Dkt. No. 3-2 at 5. They maintain that Defendant Sue Nell Dykstra waived her rights to the Policy Benefits by executing the Satisfaction and Release. Id. Thus, they argue, there is no genuine dispute of material fact regarding their entitlement to the Policy Benefits as successor beneficiaries. Dkt. No. 30-2 at 2–3.

"An insurance policy is a contract subject to the ordinary rules of contract construction, and the parties are bound by its plain and unambiguous terms. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." Partin v. Ga. Farm Bureau Mut. Ins. Co., 770 S.E.2d 38, 41 (Ga. Ct. App. 2015) (quoting Am. Strategic Ins. Corp. v. Helm, 759 S.E.2d 563, 565 (Ga. Ct. App. 2014)). Likewise, "[t]he meaning of a settlement agreement incorporated into a divorce decree should be determined according to the usual rules governing the construction of contracts. The cardinal rule thereof is to ascertain the intention of the parties. If the contract is clear and unambiguous courts will look to it and it alone to determine the intention of the parties." Kruse v. Todd, 389 S.E.2d 488, 491 (Ga. 1990). "Ambiguity in a contract is

14

defined as duplicity, indistinctness, or an uncertainty of meaning or expression." Lowry v. Fenzel, 769 S.E.2d. 522, 524 (Ga. Ct. App. 2015) (quoting Frier v. Frier, 692 S.E.2d 667, 669 (Ga. Ct. App. 2010)).

Particularly relevant here, "general releases do not waive a former spouse's right to collect the proceeds of a life insurance policy . . . owned by his or her former spouse when that spouse is the named beneficiary." Reliastar Life Ins. Co. v. Dickerson, No. 1:04-cv-3274-CAM, 2007 WL 9700633, at *3 (N.D. Ga. Mar. 7, 2007); see also Maxwell v. Britt, 319 S.E.2d 88, 89 (Ga. Ct. App. 1984) (holding that a former spouse's general release of claims in a settlement agreement did not waive the rights of the former spouse as a beneficiary of a life insurance policy not contemplated by the contract); Pate v. C. & S. Nat. Bank, 47 S.E.2d 277, 279 (Ga. 1948) (holding that a contract entered into in contemplation of a divorce proceeding where the former spouse "release[d] said husband from all claims set forth herein and all other claims, real or imaginary" did not affect the rights of the former spouse as a beneficiary of a life insurance policy not contemplated by the contract).

Finally,

[w]hen an insured is authorized by the insurance policy to change the beneficiary during his life, and the insured dies without having exercised the authority, the

15

named beneficiary has a vested interest in the proceeds
of the policy. If, however, the insured has done
substantially all that is required of him, or all that
he is able to do, to effect a change of beneficiary, and
all that remains to be done is ministerial action of the
[insurer], the change will take effect though the
details are not completed before the death of the
insured. Some affirmative act, however, on the part of
the member to change the beneficiary is required; his
mere intention will not suffice to work a change of
beneficiary.

Maxwell, 319 S.E.2d at 89-90 (citations omitted) (quoting Belote

v. Belote, 306 S.E.2d 24, 25-26 (Ga. Ct. App. 1983)).

Defendant Sue Nell Dykstra correctly notes that "there is no
dispute as between any of the parties as to what the [Policy] and
Application Designation says with respect to the beneficiaries."
Dkt. No. 12 at 5; Dkt. No. 30-1 ¶ 3.   It is undisputed that the
Policy names Defendant Sue Nell Dykstra as the primary beneficiary.
Id.   It is also undisputed that the Decedent never "made any effort
to remove [Defendant Sue Nell Dykstra] as the named beneficiary of
the Policy or otherwise name anyone else as a beneficiary of the
Policy."   Dkt. No. 12 at 5-6; Dkt. No. 30-1 ¶¶ 3, 5.   So, the
"plain and unambiguous terms" of the Policy show that Defendant
Sue Nell Dykstra is the primary beneficiary.   Partin, 770 S.E.2d
at 41; see also Maxwell, 319 S.E.2d at 89 ("When an insured is
authorized by the insurance policy to change the beneficiary during
his life, and the insured dies without having exercised the
authority, the named beneficiary has a vested interest in the
proceeds of the policy." (quoting Belote, 306 S.E.2d at 25)).   The

16

Policy is not ambiguous.  Rather, the apparent dispute lies in whether the Policy was incorporated into the Divorce Decree such that the Satisfaction and Release waived or negated Defendant Sue Nell Dykstra's expectancy interests in the Policy Benefits.

Defendants Elizabeth and Nicole Dykstra contend that the life insurance obligation imposed by the Divorce Decree incorporates the Policy such that, when read together, the Divorce Decree and the Satisfaction and Release show that Defendant Sue Nell Dykstra waived her right to the Policy Benefits.  Dkt. No. 30-2 at 3-6.

While Defendants Elizabeth and Nicole Dykstra correctly point out that the Divorce Decree did require Decedent "to maintain life insurance," dkt. no. 30-1 ¶ 2, Defendant Sue Nell Dykstra contends "there was no language in the Divorce Decree mentioning the existing [Policy] or providing that the $330,000 policy would replace the [Policy]."  Dkt. No. 12 at 7.  Further, Defendant Sue Nell Dykstra argues that the Divorce Decree and subsequent Satisfaction and Release "did not automatically change [Defendant Sue Nell Dykstra's] beneficiary status or defeat her rights under the Policy," and that the "Decedent could have always changed [Defendant Sue Nell Dykstra] as the primary beneficiary but he chose not to."  Dkt. No. 12 at 6.  As explained below, Defendant Sue Nell Dykstra is correct.

Defendants Elizabeth and Nicole Dykstra assume, without providing any evidence to support their argument, that the life

17

insurance obligation in the Divorce Decree refers to the Policy. Dkt. No. 30-2 at 2.   This is an assumption lacking evidentiary support.

There is no ambiguity in the Divorce Decree's language.   The Divorce Decree does not incorporate the Policy, nor does it address Defendant Sue Nell Dykstra's expectancy interest as a beneficiary of the Policy Benefits.   See generally Dkt. No. 4-2.   The Divorce Decree contemplated the division of marital assets, imposing various obligations and granting various rights to each person. Id.   The Divorce Decree states, in pertinent part: "[Decedent] shall maintain a life insurance policy on his life designating [Defendant Sue Nell Dykstra] as beneficiary of THREE HUNDRED THIRTY THOUSAND DOLLARS ($330,000.00) until the last transfer of property as provided herein is complete and the funds distributed to [Defendant Sue Nell Dykstra]."   Dkt. No. 4-2 at 6 ¶ M.   The quoted paragraph does not describe the Policy or any other policy already in the possession of the Decedent at the time.   Instead, it merely obligates Decedent to "maintain a life insurance policy," in a specified amount until his property obligations in the Divorce Decree have been satisfied.   Id.   Tellingly, Defendants Elizabeth and Nicole Dykstra describe the Divorce Decree as requiring Decedent to provide "at least" $330,000 of insurance.   Dkt. No. 30-1 ¶ 2.   It does not.   The decree requires the provision of $330,000 but does not utilize the phrase "at least."   Dkt. No. 4-

18

2 at 6 ¶ M.  Thus, there is nothing ambiguous regarding the language of Paragraph M.  <u>See</u> <u>Lowry</u>, 769 S.E.2d. at 524 ("Ambiguity in a contract is defined as duplicity, indistinctness, or an uncertainty of meaning or expression." (quoting <u>Frier</u>, 692 S.E.2d at 669).  Whether Decedent actually maintained a life insurance policy for $300,000 as contemplated by Paragraph M is not a question for the Court in this case.  The only question is whether the clear language of Paragraph M incorporates the million-dollar Policy at issue here, and it does not.

Nor is waiver a problem for Defendant Sue Nell Dykstra.  In a later paragraph, the Divorce Decree states: "Each party forever waives any claim to alimony that he or she may have against the other."  Dkt. No. 4-2 at 6 ¶ Q.  Paragraph Q does not describe the Policy or any other policy already in the possession of the Decedent at the time, nor does it waive any claim other than claims "to alimony."  <u>Id.</u>  Thus, to the extent that Defendants Elizabeth and Nicole Dykstra rely on this provision as evidence of a waiver by Defendant Sue Nell Dykstra to the Policy Benefits, such reliance is misguided.  The only mention of any waiver in the Divorce Decree is in Paragraph Q, and it specifically refers only to "alimony."  <u>See</u> <u>Holland v. Holland</u>, 700 S.E.2d 573, 575 (Ga. 2010) ("In construing contracts, a specific provision will prevail over a general one.").

Nor is there any ambiguity in the Satisfaction and Release. The Satisfaction and Release does not incorporate the Policy, nor does it address Defendant Sue Nell Dykstra's expectancy interest as a beneficiary of the Policy Benefits.  Dkt. No. 4-3.  The Satisfaction and Release states, in pertinent part: "By executing this Release and Satisfaction, [Defendant Sue Nell Dykstra] stipulate[s] and agree[s] that as of this date, [she] no longer ha[s] or can assert *any claim or interest in the former marital residence* located at [] Brunswick, Georgia and further that with the tender and receipt of this payment, all obligations and responsibilities of the parties provided by the Divorce Decree and Mediated Settlement Agreement have now been fulfilled and no further actions are necessary by either party." Dkt. No. 4-3 at 2 (emphasis added).  The Satisfaction and Release unambiguously waives Defendant Sue Nell Dykstra's claims and interests, specifically, in the "former marital residence," and states that the obligations contemplated by the Divorce Decree are "fulfilled."  Id.  Because "a specific provision prevails over a general one," it is clear that Defendant Sue Nell Dykstra's waiver of claims was with regard to the "former marital residence," not any other rights or interests.  Holland, 700 S.E.2d at 575.

Defendant Sue Nell Dykstra did not waive or negate her expectancy interest in the Policy Benefits through the Satisfaction and Release.  She did agree "that with the tender and

receipt of this payment, all obligations and responsibilities of the parties provided by the Divorce Decree and Mediated Settlement Agreement have now been fulfilled and no further actions are necessary by either party." Dkt. No. 30-2 at 5. Given that the language of the Divorce Decree in no way implicates or incorporates the Policy or the Policy Benefits, see supra, this "general release of claims" does not waive Defendant Sue Nell Dykstra's rights under the Policy. Maxwell, 319 S.E.2d at 89.

Therefore, to the extent Defendants Elizabeth and Nicole Dykstra argue that either the Divorce Decree or the Satisfaction and Release constitutes a waiver of Defendant Sue Nell Dykstra's rights as the primary beneficiary under the Policy, the plain, unambiguous terms of both, when read together or alone, show otherwise. Neither the Policy nor the Policy Benefits were incorporated into or contemplated by the Divorce Decree or the Satisfaction and Release, and there is no evidence in the record showing otherwise. Instead, the Policy was a result of Decedent's voluntary application for life insurance benefits, years before the Divorce Decree came into existence. Dkt. No. 4-1 at 16; Dkt. No. 4 ¶¶ 12, 13; Dkt. No. 12 at 2-3; Dkt. No. 30-1 at 3.

As discussed herein, even if the Court were to construe the one-million-dollar State Farm Policy as the $330,000 policy required by the Divorce Decree, Defendants Elizabeth and Nicole Dykstra would still suffer summary judgment against their claims.

21

That is because no document required the Decedent to remove Defendant Sue Nell Dykstra as a beneficiary.  The Divorce Decree required him to provide a certain amount of insurance for a certain amount of time.  Dkt. No. 4-2 at 6 ¶ M.  He, all agree, did so. Dkt. No. 30-2 at 5; Dkt. No. 34 at 3-4.  Neither the Divorce Decree nor the Satisfaction and Release prohibited him from providing more insurance for a longer period of time.  Dkt. No. 4-2 at 6 ¶ M; Dkt. No. 4-3.  The undisputed facts show that he did so.

Therefore, because it is undisputed that the Policy names Defendant Sue Nell Dykstra as the primary beneficiary, dkt. no. 12 at 5; dkt. no. 30-1 ¶ 3; and it is undisputed that Decedent never "made any effort to remove [Defendant Sue Nell Dykstra] as the named beneficiary of the Policy or otherwise name anyone else as a beneficiary of the Policy," dkt. no. 12 at 5-6;, there is no genuine dispute of material fact regarding Defendant Sue Nell Dykstra's entitlement to the Policy Benefits as the primary beneficiary under the Policy.  Accordingly, Defendant Sue Nell Dykstra's motion for summary judgment, dkt. no. 12, is **GRANTED**, and Defendants Elizabeth and Nicole Dykstra's motion for summary judgment, dkt. no. 30, is **DENIED**.

### III. Plaintiff State Farm's Claim for Fees and Costs

"In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stake

holder." Prudential Ins. Co. of Am. v. Boyd, 781 F.2d 1494, 1497 (11th Cir. 1986). It is well established that in filing an interpleader action to resolve adverse claims to insurance policy benefits, insurance companies are doing so in the ordinary course of business, and "[u]nlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business." In re Mandalay Shores Coop. Hous. Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994); see also id. at n.2 ("This conclusion should not be surprising. Courts have allowed fees in interpleader—even to insurance companies—'if the case involves disputes which do not ordinarily rise in the course of the insurance business....'" (citations omitted)). This dispute arose in the ordinary course of Plaintiff State Farm's insurance business. Accordingly, Plaintiff State Farm's request for fees and costs is **DENIED.**

## IV. Defendant American Funeral Financial's Failure to Respond to Interpleader Complaint or Motion

On January 21, 2022, Defendant American Funeral Financial signed and returned a waiver of service request. Its answer, thus, was due on March 22, 2022, but it failed to file an answer. Dkt. No. 9. In the waiver of service summons, Defendant American Funeral Financial acknowledged that failure to file an answer will result in "a default judgment [] [] entered against" it. Dkt. No.

9.  Defendant American Funeral Financial has not plead or otherwise appeared since executing that waiver.

Under Federal Rule of Civil Procedure 55(a), the Court may, in its discretion, enter default judgment against a party who has failed to plead in response to a complaint.  See Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977) ("Generally, the entry of default judgment is committed to the discretion of the district judge."). In considering whether default judgment is appropriate against one defendant in a multi-defendant case, courts should consider whether the default presents "a risk of 'inconsistent adjudications.'"  Prudential Ins. Co. of America v. Crouch, No. cv-109-148, 2010 WL 5071392, at *6 (S.D. Ga. Dec. 7, 2010) (quoting Kapadia v. Thompson, No. 06-cv-1359, 3008 WL 5225813, at *3 (D. Ariz. Dec. 15, 2008).  Moreover, a district court "has inherent authority in appropriate circumstances to *sua sponte* enter a default judgment that in an interpleader action [] serves to terminate the party's interest in the fund at issue."  BBVA USA Bancshares, Inc. v. Bandy, No. 2:19-cv-01548-SGC, 2020 WL 3104594, at *3 (N.D. Ala. June 11, 2020) (quoting Metro. Life Ins. Co. v. Jackson, No. 3:11-cv-967-J-34JRK, 2013 WL 3974674, at *5 (M.D. Fla. Aug. 1, 2013); Occidental Life Ins. Co. of N.C. v. Ligon, No. 1:17-cv-02403-ELR, 2018 WL 9814655, at *1 (N.D. Ga. July 24, 2018)).

Courts have held that "a default judgment may be entered against any named and served interpleader defendant who fails to respond to the interpleader complaint." <u>Bandy</u>, 2020 WL at *3) (quoting <u>Protective Life Ins. Co. v. Tinney</u>, No. 2:14-cv-02251-TMP, 2015 WL 1402464, at *4 (N.D. Ala. Mar. 25, 2015) (collecting cases)).   The main purpose "is to protect the interpleader plaintiff and other defendants by removing from the litigation any party who expresses no interest in the *res* of the dispute." <u>Tinney</u>, 215 WL 1402464, at *4.

> "Without the ability to enter a default judgment against an interpleader defendant who refuses to appear in the action, the court is unable to provide relief to the remaining defendants. If an interpleader defendant can prevent the resolution of an interpleader by simply refusing to appear in the action, the court cannot effectively and finally address the distribution of interpleader *res*."

<u>Id.</u>

Defendant American Funeral Financial has not plead or otherwise appeared in this case since executing its waiver of service, despite its acknowledgment that failure to do so would result in a default judgment against it.   Dkt. No. 9.   The Court does not recognize any inconsistencies that could result by entering default judgment against Defendant American Funeral Financial while simultaneously resolving the dispute in favor of

Defendant Sue Nell Dykstra.  Accordingly, default judgment against American Funeral Financial is **ORDERED**.

## V.    Supplemental   Jurisdiction   Over   Defendant   Sue   Nell   Dykstra's Crossclaim

Now, all that remains is Defendant Sue Nell Dykstra's crossclaim.  Therein, she alleges Defendants Elizabeth and Nicole Dykstra "have attempted and continue to attempt to mislead and distract with a series of false and misleading statements and mischaracterizations in order to gain control of the insurance benefits," dkt. no 15 ¶ 42, and that their "actions are designed to harass [Defendant Sue Nell Dykstra] and thwart the payment of the insurance benefits to the proper person and beneficiary," id. ¶ 43.  It is unclear what type of claim Defendant Sue Nell Dykstra is asserting, but the Court can discern that she primarily seeks to recover attorney's fees and costs incurred in defending her claim to the Policy Benefits.

Notably, no party moved for summary judgment on the crossclaim.  However, "[a] district court may grant summary judgment *sua sponte* if it provides the parties with adequate notice." Shivers v. Int'l Broth. Of Elec. Workers Local Union 349, 262 F. App'x 121, 127 (11th Cir. 2008).  There being no dispute of material facts in this case, the crossclaim can be decided as a matter of law.  Club Madonna, Inc. v. City of Miami

Beach, 500 F. Supp. 3d 1304, 1313 n.1 (S.D. Fla. 2020).  As such, the Court **ORDERS** as follows:

1. Defendant Sue Nell Dykstra shall file with the Court, within **fourteen (14) days** of the date of this Order, either:  a motion for summary judgment with regard to the crossclaim or a notice that she does not intend to pursue the claim.

2.  If Defendant Sue Nell Dykstra chooses the former option, Elizabeth and Nicole Dykstra shall have **twenty (20) days** to respond to the motion for summary judgment.

### CONCLUSION

For the foregoing reasons, default judgment is hereby **ENTERED** against Defendant American Funeral Financial; Plaintiff State Farm's request for costs and fees is **DENIED**. Defendant Sue Nell Dykstra must file either a motion for summary judgment on the crossclaim or a notice that she does intend to pursue the crossclaim, within **fourteen (14) days** of the date of this Order. Accordingly, if Defendant Sue Nell Dykstra does file a motion for summary judgment, Defendants Elizabeth and Nicole Dykstra must file a response within **twenty (20) days**.

Otherwise, Defendant Sue Nell Dykstra's motion for summary judgment, dkt. no. 12, is **GRANTED**, and Defendants Elizabeth and Nicole Dykstra's motion for summary judgment, dkt. no. 30, is **DENIED**.  The Clerk is **DIRECTED** to disburse to Defendant Sue Nell

Dykstra the $1,032,468.04 State Farm previously deposited into the Court's registry, plus accrued interest.

**SO ORDERED** this 3rd day of November, 2022.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA